UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

14 - 1097

WAYNE SPENCER and MACH 5 LEASING, INC.

Plaintiffs-Appellant,

v.

TACO BELL CORP and TACO BELL FOUNDATION

Defendants-Appellees.

Appeal from the United States District Court for the Middle District of Florida in case no. 8:12-CV-00387, Judge Steven D. Merryday.

**APPELLANTS' OPENING BRIEF**

Edward P. Dutkiewicz
For Appellants
PO Box 937
Dade City, FL 33526-0937
352 467 2682 (p)
352 567 5526 (f)
edduke@embarqmail.com (email)

December 24, 2013

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

**14 - 1097**

WAYNE SPENCER and MACH 5 LEASING, INC.

Plaintiffs-Appellant,

v.

TACO BELL CORP and TACO BELL FOUNDATION

Defendants-Appellees.

Appeal from the United States District Court for the Middle District of Florida in case no. 8:12-CV-008387, Judge Steven D. Merryday.

**CERTIFICATE OF INTEREST**

Counsel for the appellant, MACH 5 LEASING, INC. certifies the following:

1.   The full name of every party represented by me is:

Mach 5 Leasing, Inc., a Florida Corporation

and Wayne Spencer, individually.

2.   The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:          NONE.

3.   All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:  NONE.

[X]     There is no such corporation as listed in paragraph 3.

    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the

-i-

trial court or agency or are expected to appear in this court
are:

       Edward P. Dutkiewicz, P.A.

       Edward P. Dutkiewicz

       P.O. Box 937

       Dade City, FL 33526-0937

       (352) 467 - 2682 (p)

       (352) 567 - 5526 (f)

       edduke@embarqmail.com (Email)


Dated : December 24, 2013      /s/ Edward P. Dutkiewicz

                            Edward P. Dutkiewicz

                            P.O. Box 937

                            Dade City, FL 33526-0937

                            PH: (352) 467 - 2682

                            FX: (352) 567 - 5565

                            edduke@embarqmail.com (email)

**TABLE OF CONTENTS**

                                                              **Page**

Certificate of Interest       . . . . .    i - ii

Table of Contents             . . . . .    iii

Table of Authorities          . . . . .    iv - ix

Statement of Related Cases    . . . . .    x - xi

Applicable Statutes           . . . . .    xii - xiv


Jurisdictional Statement      . . . . .    1

Statement of the Issues       . . . . .    1

Statement of the Case         . . . . .    2

Statement of the Facts        . . . . .    2

Summary of the Argument       . . . . .    6

Argument; Issue (1)           . . . . .    6

Argument; Issue (2)           . . . . .    12

Argument; Issue (3)           . . . . .    24

Standard of Review            . . . . .    33


Conclusion                    . . . . .    33

Order Appealed From           . . . . .    35

Certificate of Service        . . . . .    62

Certificate of Compliance     . . . . .    63

**TABLE OF AUTHORITIES**                              **PAGE**

Amini Innovation Corp. v. Anthony Cal., Inc.,

439 F.3d 1365, (Fed.Cir.2006)            . . .      32


Anascape, Ltd. v. Nintendo of America Inc.,

601 F.3d 1333,(Fed.Cir.2010)             . . .      10


Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, (1986)                  . . .      33


Ariad Pharm., Inc. v. Eli Lilly & Co.,

598 F.3d 1336, (Fed.Cir.2010)            . . .   14, 20, 21


Bell Atl. Network Servs., Inc. v. Covad

Communications Group, Inc.,

262 F.3d.1258, (Fed.Cir.2001)            . . .      33


Bilstad v. Wakalopulos,

386 F.3d 1116, (Fed.Cir.2004)            . . .      21


Braun Inc. v. Dynamics Corp. Of Am.,

975 F.2d 815, (Fed.Cir.1992)             . . .      32

Cooper Cameron Corp. v. Kvaerner Oilfield Prods.,
291 F.3d 1317, (Fed.Cir.2002) . . . 16

Cortland Line Co. v. Orvis Co.,
203 F.3d 1351, (Fed.Cir.2000) . . . 33

Cummins-Allison Corp. v. SBM Co., Ltd.,
Slip Copy, 2012 WL 1890153,
(Fed.Cir.2012) . . . 16

Edwards Lifesciences LLC v. Cook Inc.,
582 F.3d 1322, (Fed.Cir.2009) . . . 33

Egyptian Goddess, Inc. v. Swisa, Inc.,
543 F.3d 665 (Fed.Cir.2008) . . . 26, 29, 32

E-Z Bowz, L.L.C. v. Professional Product Research Co., Inc.,
Not Reported in F.Supp.2d,
2003 WL 22068573, S.D.N.Y.,2003 . . . 9

Fiers v. Revel,
984 F.2d 1164, (Fed.Cir.1993) . . . 10, 20

Fujikawa v. Wattanasin,

93 F.3d 1559, (Fed.Cir.1996) . . . 20


Gentry Gallery, Inc. v. Berkline Corp.,

134 F.3d 1473, (Fed.Cir.1998) . . . 10


Gorham Co. v. White,

81 U.S. 511, (1871) . . . 26, 27


Hall v. Bed Bath & Beyond, Inc.,

705 F.3d 1357, (Fed.Cir.2013) . . . 27


ICN Photonics, Ltd. v. Cynosure, Inc.,

73 Fed.Appx. 426, C.A. Fed., 2003 . . . 20


In re Curtis,

354 F.3d 1347, (Fed.Cir.2004) . . . 10, 19,


In re Daniels,

144 F.3d 1452,(Fed.Cir.1998) . . . 7, 16, 17


In re Gosteli,

872 F.2d 1008,(Fed.Cir.1989) . . . 13, 16, 17

In re Kaslow,

707 F.2d 1366, (Fed.Cir.1983)                          . . .        20


In re Owens,

710 F.3d 1362, (Fed.Cir.2013)                     . . .        7, 14, 15


In re Smythe,

480 F2.d 1376,    (CCPA 1973)                     . . .        18


In re Wolfensperger,

302 F.2d 950, (CCPA 1962)                         . . .        11


Johnson Worldwide Assoc. v. Zebco Corp.,

175 F.3d 985, (Fed.Cir.1999)                      . . .        23


Kennecott Corp. v. Kyocera Int'l, Inc.,

835 F.2d 1419, (Fed.Cir.1987)                     . . .        9, 17


KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,

997 F.2d 1444, (Fed.Cir.1993)                     . . .        32


L.A. Gear, Inc. v. Thom McAn Shoe Co.,

988 F.2d 1117, (Fed.Cir.1993)                     . . .        26, 30

Lampi Corp. v. Am. Power Prods., Inc.,

228 F.3d 1365, (Fed.Cir.2000)   . . .   23


Lee v. Dayton-Hudson Corp.,

838 F.2d 1186, (Fed.Cir.1988)   . . .   29


Mahurkar v. Arrow Intern., Inc.,

160 F.Supp.2d 927, N.D.Ill.,2001   . . .   23


Playtex Products, Inc. v. Procter & Gamble Co.,

400 F.3d 901,(Fed.Cir.2005)   . . .   11


PowerOasis, Inc. v. T-Mobile USA, Inc.,

522 F.3d 1299, (Fed.Cir.2008)   . . .   20


Tronzo v. Biomet, Inc.,

156 F.3d 1154, (Fed.Cir.1998)   . . .   10


Racing Strollers, Inc. v. TRI Indus., Inc.

878 F.2d 1418, (Fed.Cir.1989))   . . .   7


Ralston Purina Co. v. Far-Mar-Co, Inc.,

772 F.2d 1570, (Fed.Cir.1985)   . . .   18, 21

Research Corp. Technologies, Inc., v. Microsoft, Corp.,
527 F3d 859, (Fed.Cir.2010)                . . .    20


Revision Military, Inc. v. Balboa Mfg. Co.,
700 F.3d 524, (Fed.Cir.2012)               . . .    26


Richardson v. Stanley Works, Inc.,
597 F.3d 1288, (Fed.Cir.2010               . . .    30


SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys. Inc.,
242 F.3d 1337, (Fed.Cir.2001)              . . .    11


Synthes USA, LLC v. Spinal Kinetics, Inc.,
--- F.3d ----, 2013 WL 5788675,
(Fed.Cir.2013)                             . . .    21


Vas-Cath, Inc. v. Mahurkar,
935 F.2d 1555, (Fed.Cir.1991)              . . .    9, 11, 16,
                                                    18, 19,
Utter v. Hiraga,
845 F.2d 993, (Fed.Cir.1988)               . . .    10


Wertheim,
541 F.2d 257, (CCPA 1976)                  . . .    13

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT


14 - 1097

WAYNE SPENCER and MACH 5 LEASING, INC.

Plaintiffs-Appellant,

v.

TACO BELL CORP and TACO BELL FOUNDATION

Defendants-Appellees.


Appeal from the United States District Court for the Middle District of Florida in case no. 8:12-CV-008387, Judge Steven D. Merryday.


## STATEMENT OF RELATED CASES


There is no other case filed before the Federal Circuit to which this case is related.


Dated:    December 24, 2013

/s/ Edward P. Dutkiewicz

Edward P. Dutkiewicz

P.O. Box 937

Dade City, FL 33526-0937

PH: (352) 467 - 2682


-x-

FX: (352) 567 - 5565

edduke@embarqmail.com (email)

**APPLICABLE STATUTES**

**35 U.S.C. 112 Specification.**

(a) IN GENERAL.--The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

(b) CONCLUSION.--The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention .

(c) FORM.--A claim may be written in independent or, if the nature of the case admits, in dependent or multiple dependent form.

(d) REFERENCE IN DEPENDENT FORMS.--Subject to subsection (e), a claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed. A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.

(e) REFERENCE IN MULTIPLE DEPENDENT FORM.--A claim in multiple dependent form shall contain a reference, in the alternative only,

to more than one claim previously set forth and then specify a further limitation of the subject matter claimed. A multiple dependent claim shall not serve as a basis for any other multiple dependent claim. A multiple dependent claim shall be construed to incorporate by reference all the limitations of the particular claim in relation to which it is being considered.

(f) ELEMENT IN CLAIM FOR A COMBINATION.--An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.


**35 U.S.C. 120 Benefit of earlier filing date in the United States.**

An application for patent for an invention disclosed in the manner provided by section 112(a) (other than the requirement to disclose the best mode) in an application previously filed in the United States, or as provided by section 363, which names an inventor or joint inventor in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain

a specific reference to the earlier filed application. No application shall be entitled to the benefit of an earlier filed application under this section unless an amendment containing the specific reference to the earlier filed application is submitted at such time during the pendency of the application as required by the Director. The Director may consider the failure to submit such an amendment within that time period as a waiver of any benefit under this section. The Director may establish procedures, including the payment of a surcharge, to accept an unintentionally delayed submission of an amendment under this section.

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

14 - 1097

WAYNE SPENCER and MACH 5 LEASING, INC.

Plaintiffs-Appellant,

v.

TACO BELL CORP and TACO BELL FOUNDATION

Defendants-Appellees.

Appeal from the United States District Court for the Middle District of Florida in case no. 8:12-CV-00387, Judge Steven D. Merryday.

**APPELLANTS' OPENING BRIEF**

**JURISDICTION**

The United States Court of Appeals for the Federal Circuit has jurisdiction to hear this matter under 28 USC 1295(a)(1) in that the appeal arises from an a final decision in an action under U.S. Patent law.

**STATEMENT OF THE ISSUES**

There are three issues to be determined in this matter, being;

Issue 1. Did the District Court err in only looking to the drawings of the utility parent application when doing a section 120 analysis to determine the applicability of a priority date for a design patent;

Issue 2. Did the District Court err in doing its analysis on an element by element basis, looking for any differences between the parent utility application and the design patent at issue

rather than looking to the parent utility application to determine whether the required disclosure was present sufficient to support a priority date; and

Issue 3. Did the District Court err in its analysis as to infringement of the accused device compared with the drawing of the patent at issue by applying an element by element analysis rather than the "ordinary observer" test.

## STATEMENT OF THE CASE

This is a case of design patent infringement. At this stage, this case turns on the determinations of priority and infringement, in that the District Court has found that priority is not supported, an on sale bar applies, and the patent is not infringed.

The patent at issue is a design patent, U.S. Patent D643,474 (the '474 patent)(A00031), which claims the priority of its parent, application 12/316,419 (the '419 application), which, in turn claims the priority of application 10/746,414 (the '414 application)(A00349), which was filed on December 24, 2003.

Plaintiffs sued Defendants, alleging infringement of the '474 design patent. Upon a motion for summary judgment, the District Court held for the Defendants, prompting this timely appeal.

## STATEMENT OF THE FACTS

The '474 patent (A00031), entitled "Coin Drop Game," covers the design features of a one-player game. To play the game, a user drops a coin into the top of a chamber having a hexagonally shaped

outside wall (A00034, Fig. 5). The chamber sits on a hexagonally shaped pedestal(A00035). The "game" is controlled by a central, vertical shaft having ten pie-shaped "petals" located on the shaft, inside the chamber, and turning with the rotation of the central shaft (A00033, Fig 3). The design permits the user, as the coin falls, to turn the shaft in an attempt to catch the coin on a higher-level petal and manipulate the petal to achieve a controlled transfer of the coin to a lower-level petal and, thence, to the winning of a prize.

In 2002, Spencer, one of the Plaintiffs, had received a patent for a water containing game, which was petal game, filled with water, and having a different lid and central axle. The second Plaintiff, Mach 5 Leasing, Inc., is a Florida corporation partially owned by Plaintiff Spencer. Mach 5 Leasing, Inc. is engaged in the business of leasing Spencer's "mach 5" game. The Spencer patent for the water filled coin game issued on April 9, 2002, as U.S. Patent 6,367,801. The '801 patent is not pertinent to determining the issues presently before the Court.

The prosecution history of the '474 patent involves several patents and applications, being, in chronological order from earliest to latest, the '414 application (application number 10/746,414)(A00349), which was filed on December 24, 2003. The '419 application (application number 12/316,419) was filed on December 12, 2008, as a continuation in part of the '414

-3-

application, thereby claiming the priority of the '414 parent application. The '474 patent was filed on February 18, 2011, as application number 29/373,021. The '474 claimed the priority of the '414 and the '419 (Doc 74-2, at 2). The design patent application was issued as a design patent on August 16, 2011, as Patent Number D643,474.

Starting around 2006 (A00531, L 5-15), Spencer placed in public use a coin game under the name "Mach 5" or "Mach 5 Canister." The Mach 5 is the canister patented in the '474 patent, issued on August 16, 2011.

Beginning in 2005 or 2006, Taco Bell Corporation (TBC) allowed Taco Bell Foundation (TBF) to place its game in Taco Bell restaurants (A00321-322). The games generated winners who were rewarded with Taco Bell products, which were provided by TBC. The Mach 5 game was and is used in similar locations and in similar circumstances.

On February 23, 2012, the plaintiffs sued TBC and TBF for infringement of the '474 patent and for enhanced damages for willful infringement. The plaintiffs argue that TBC and TBF have infringed the '474 patent through the use of a similar canister. TBC and TBF argued (1) that the '474 patent is invalid under the on-sale bar,(2) that the '474 patent is invalid because the canister's ornamental design is dictated by function, (3) that the accused canister does not infringe the '474 patent, and (4) that

-4-

the plaintiffs cannot prove willful infringement.

In granting summary judgment to Defendant, the Court found six differences between the '474 patent and the '414 application, stating:

> "The canisters depicted in the '414 application and the '474 patent have six distinguishing features. First, the lid drawn in the '414 application has a flat surface, but the lid drawn in the '474 patent has six raised triangles.
>
> Second, the lid in the '414 application has a single slot on the side for use with a padlock. The '474-patent lid has no slot on the side; instead, the lid has three lock wells.
>
> Third, the bottom of the '474-patent canister, which is drawn separately, has a circular pad placed near each of the six vertices of the pedestal. The '414 application includes no drawing of the bottom of the canister. The '414 application includes a perpendicular view from the side, and two pads on the bottom of the canister are visible in the drawing. But each pad has an unidentifiable shape and is not necessarily placed at the vertices of the pedestal. Also, if the bottom of the '414-application canister had six pads arranged as the pads are arranged on the '474-patent canister, the perpendicular side view would show four pads. But the '414 application's perpendicular side-view drawing shows only two pads.
>
> Fourth, the views from the top of each canister show a difference in the layout and the width of the pedals. The drawing in the '474 patent shows that the pedals are wide enough, and properly arranged, to occupy, if viewed from above, nearly 360 degrees. However, the '414 application shows pedals that are thinner and arranged differently. The result is (1) that the pedals of the '414- application canister, if viewed from above, occupy substantially less than 360 degrees FN4 and (2) that the top and middle pedal-levels of the '414-application canister have parallel axes, but the corresponding axes in the '474 patent are skewed. FN5
>
> Fifth, the '414 application depicts a "base support plate" at the bottom of the chamber with "six outwardly extending fingers." The '474-patent drawings depict the base plate poorly, but the drawings include enough detail for a viewer to see that the base plate has no fingers.
>
> Sixth, the pedestal of the '414-application canister has squared edges, but the pedestal in the '474 patent has rounded edges.

-5-

FN4 In other words, a viewer looking directly down on the '414-application canister can easily see the bottom of the canister through the five layers of pedals. However, a viewer looking directly down on the '474-patent canister has the viewer's vision almost entirely obstructed by the pedals.
FN5 The axes of the '414-application canister and the '474-patent canister are dissimilar in other specifics, but a comparison of the top- and middle-level axes of each canister shows the most representative and visible difference.

(A00008-09).

## SUMMARY OF THE ARGUMENTS

Issue 1. Did the District Court err in only looking to the drawings of the utility parent application when doing a section 120 analysis to determine the applicability of a priority date for a design patent;

Issue 2. Did the District Court err in doing its analysis on an element by element basis, looking for any differences between the parent utility application and the design patent at issue rather than looking to the parent utility application to determine whether the required disclosure was present sufficient to support a priority date; and

Issue 3. Did the District Court err in its analysis as to infringement of the accused device compared with the drawing of the patent at issue by applying an element by element analysis rather than the "ordinary observer" test.

## ARGUMENT

**Issue 1.** Did the District Court err in only looking to the drawings of the utility parent application when doing a section 120

analysis to determine the applicability of a priority date for a
design patent

In the Amended Order (A00001), the Court looked only to the
drawings of the parent utility patent to determine the
applicability of the priority date (A00011). The Appellant,
Spencer, contends that the limitation of examination for section
120 purposes, to the drawings of the parent utility patent, alone,
without consideration of the text of the specification, was error.

The District Court stated:

> "As the Federal Circuit, explains: "[A] design . . . can
> be described only by illustrations showing what it looks like
> (though some added description in words may be useful to
> explain the illustrations). As a practical matter, meeting the
> remaining requirements of § 112 is, in the case of an
> ornamental design, simply a question of whether the earlier
> application contains illustrations, whatever form they may
> take, depicting the ornamental design illustrated in the later
> application and claimed therein by the prescribed formal
> claim."
> Racing Strollers, Inc. v. TRI Indus., Inc., 878 F.2d
> 1418, 1420 (Fed. Cir. 1989); accord Owens, 710 F.3d at 1366
> ("[W]hen an issue of priority arises under § 120 in the
> context of a design patent prosecution, one looks to the
> drawings of the earlier application for disclosure of the
> subject matter claimed in the later application.); Daniels,
> 144 F.3d at 1456 ("Thus[,] when an issue of priority arises
> under § 120, one looks to the drawings of the earlier
> application for disclosure of the subject matter claimed in
> the later [design patent] application."). The plaintiffs argue
> that, in addition to consideration of the drawings of the
> parent application, the written description test includes
> consideration of the claims of a parent utility application."

(A00011-12). Plaintiffs contend that District Court
misconstrued Daniels, in that Daniels was a design application
based on a design parent, and so for §112 analysis all Daniels had

-7-

were prior patent drawings. Racing Strollers was a design which had a utility as a parent. The Racing Strollers Court did not reach the issue of what a Court must consider to determine priority, only that a design patent application can be based on a utility patent application. The Court relied upon the text of Racing Strollers where the Court, in that case, found for §112 purposes, for a design patent one only has drawings to look to. Plaintiffs contend that this is different from doing a §120 analysis for a prior patent or patent application.

The Court's logic seems to be misdirected. It appears that the case cited by the Court was discussing the determination of a §112 issue, which is whether there is a sufficient description in that particular application. The matter to be decided by the Court was whether the description in the parent was sufficient to find §120 priority application. The Court appears to take the Daniels' Court's logic, and defined it to mean that to determine §120 applicability in an continuation in part design, one can only look to the drawings of the utility parent. Plaintiffs contend that this is error.

The District Court mixes Court language which describes Claim scope, §112 analysis, and best mode analysis to arrive at its conclusion that only drawings from a utility patent may be used to determine §120 application for a continuation in part design patent (A00012-13).

-8-

It also appears that the Court misunderstood Spencer's argument, in that Spencer argued that the specification and the claims (not just the claims) should also be considered in doing a Section 112 and Section 120 analysis, stating:

> "As to both arguments, Defendant relies on the drawings to make their case. However, the specification and claims may be used to determine whether a prior application passes 112 muster for purposes of priority date assignment.
>      "A specification may, within the meaning of 35 U.S.C. § 112 ¶ 1, contain a written description of a broadly claimed invention without describing all species that claim encompasses"); Kennecott Corp. v. Kyocera Int'l, Inc., 835 F.2d 1419, 5 USPQ2d 1194 (Fed.Cir.1987)".
> Vas-Cath, at 1563. In addition to the specification, one may look to the claims, as well, to find adequate teaching to satisfy the requirements of 112.
>      "A reasonable jury could find that the claims and drawings in the '618 Application sufficiently described the later invention in the '998 Patent".
> E-Z Bowz, L.L.C. v. Professional Product Research Co., Inc., Not Reported in F.Supp.2d, 2003 WL 22068573, page 15, S.D.N.Y.,2003".

(A00454). The E-Z Bowz Court cited to opinions such as Vas-Cath, stating:

> "in determining the extent of the disclosure in the earlier application, the entire application, including diagrams, schematics and drawings, must be considered as part of the disclosure") (citing Vas-Cath, 935 F.2d at 1564)".

E-Z Bowz, LLC v. Professional Product Research Co., Inc., 2003 WL22068573, page 14, S.D.N.Y. 2003. The interplay between Section 112 (the description requirement) and Section 120 (priority) has been recognized by the Courts, holding that to do a 120 priority analysis, one must first do a 112 description analysis.

> "Claims found in a later-filed application are entitled to the filing date of an earlier application if, inter alia

the disclosure in the earlier application provides an adequate written description of the later-filed claims under 35 U.S.C. § 112, ¶ 1. See <u>Tronzo v. Biomet, Inc.</u>, 156 F.3d 1154, 1158 (Fed.Cir.1998) (discussing requirements of claiming benefit of priority date of earlier application under 35 U.S.C. § 120). This requires the disclosure in the earlier application to reasonably convey to one of ordinary skill in the art that the inventors possessed the later-claimed subject matter when they filed the earlier application. <u>Id.</u>; see also <u>Gentry Gallery, Inc. v. Berkline Corp.</u>, 134 F.3d 1473, 1479 (Fed.Cir.1998) ("To fulfill the written description requirement, the patent specification "must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed.' ") (citation omitted); <u>Regents of the Univ. of Cal. v. Eli Lilly & Co.</u>, 119 F.3d 1559, 1566 (Fed.Cir.1997) (same)".

<u>In re Curtis</u>, 354 F.3d 1347, 1351-52, C.A.Fed.,2004. Before determining priority, the 112 analysis must be done on the parent application "(<u>Fiers v. Revel</u>, 984 F.2d 1164, 1169-70 (Fed.Cir.1993) (entitlement to the benefit of an earlier-filed application date requires that the earlier application meets the requirements of § 112." <u>Anascape, Ltd. v. Nintendo of America Inc.</u>, 601 F.3d 1333, C.A.Fed. (Tex.),2010.

The District Court held that design application §120 analysis would not include the specification of the parent utility patent, stating:

> "Arguing that application of the written description test includes consideration of the specification of the parent utility application, the plaintiffs quote <u>Utter v. Hiraga</u>, which says, "A specification may, within the meaning of 35 U.S.C. § 112 ¶ 1, contain a written description of a broadly claimed invention without describing all species that claim encompasses." 845 F.2d 993, 998 (Fed. Cir. 1988). However, the plaintiffs apply the precedent out of context; Utter involved a utility patent, not a design patent. Because of the difference between a design patent and a utility patent, the principle is inapplicable in this design-patent context".

-10-

(A00012-13)    Spencer contends that a proper §112 and §120 analysis for a design application seeking priority of a utility parent, is the consideration of the utility specification, claims, and drawings, in essence, all of the teaching of the utility parent.   In the process of doing a §112 analysis for a specific patent application, one looks to the claims, and then to the specification, of which the drawing is a part, to see if the claims are supported.

> "The specification includes the drawings, see, e.g., Vas-Cath, Inc. v. Mahurkar, 935 F.2d 1555, 1565 (Fed.Cir.1991) ("under proper circumstances, drawings alone may provide a 'written description' of an invention as required by § 112"). The abstract can also serve to support the corresponding structure for § 112. See, e.g., SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1342 (Fed.Cir.2001)".

Playtex Products, Inc. v. Procter & Gamble Co., 400 F.3d 901, 909, C.A.Fed. (Ohio),2005.   Simply put, the entire parent application may be considered, and is not precluded, when a §120 and §112 analysis is carried out.

> "The issue here is whether there is supporting "disclosure" and it does not seem, under established procedure of long standing, approved by this court, to be of any legal significance whether the disclosure is found in the specification or in the drawings so long as it is there. (Citing In re Wolfensperger, 302 F.2d 940, 955-56, (1962))".

Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1565, C.A.Fed. (Ill.),1991.   The issue is whether the Court should have looked to

-11-

the Specification of the parent utility application in determining
whether the design patent was entitled to the priority day of the
parent utility. The Plaintiff contends that the line of Federal
Circuit opinions holds that the Specification includes the
drawings, and the Specification must be examined to determine any
applicable priority date assignment.

**Issue 2**. Did the District Court err in doing its analysis on
an element by element basis, looking for any differences between
the parent utility application and the design patent at issue
rather than looking to the parent utility application to determine
whether the required disclosure was present sufficient to support
a priority date.

In looking to only the drawings of the parent utility patent
(the '414 grandparent and 419 parent patent applications), the
Court examines each element an notes any differences. The Court
looks first to the pads of the '474 design patent canister,
stating:

> "In addressing the six pads on the base of the '474-
> patent canister, the plaintiffs note that the '414 application
> specifies that "pads are secured to the lower face of the
> lower base as shown on the bottom of Figure 2." (Doc. 74-1 at
> 11)(A00460) The plaintiffs' argument is misguided; the written
> description requirement looks to the drawings and consults the
> specification only to describe the drawing. The specification
> in the '414 application cannot save the drawings because the
> drawings are inconsistent with the six-pad arrangement found
> in the '474 patent FN8: the perpendicular side-view drawing in
> the '414 application shows only two pads, but a similar view
> of the '474- patent canister would show four pads.FN9 Even if

the specification could add to, or detract from, the drawings, the language in the '414 application – which says that pads are secured to the base "as shown" in the drawings – contributes nothing to the drawings.
FN8 Also, the shape of the pads on the bottom of the '414-application canister is not drawn, but the '474 patent depicts circular pads.
FN9 Figures 1 and 2 of the '474 patent are perpendicular side views of the canister. The drawings have five pads, not four. Given the layout of the pads in Figure 6, which is more detailed, the artist most likely carelessly drew too many pads in Figures 1 and 2. However, even if the five pad drawings are correct, the perpendicular side-view drawings of the '474 patent show more than two pads".

(A00014-16). The Court looks to the exact locations of the pads, doing a side by side comparison, looking for any differences. Plaintiff contends that the proper analysis for §112 and §120 purposes would be to consider the entire parent application, and determine whether one skilled in the art would "recognize that [the inventor] invented what is claimed". <u>Wertheim</u>, 541 F.2d at 262, 191 USPQ at 96". <u>In re Gosteli</u>, 872 F.2d 1008, 1012, C.A.Fed.,1989. The Court, in all its focused, painstaking, analysis, does not appear to have carried out this critical step. Spencer argued that the specification of the '414 (followed by the '419) utility application taught the presence of the pads on the bottom of the canister, stating:

> "A reading of the specification of the '414 application would lead one to see that the "the six circular-shaped pads on the lower surface of the canister base" are found in the specification of the '414 patent application, hereto attached as Exhibit 1, wherein the applicant (Spencer) teaches "Elastomeric pads are secured to the lower face of the lower base, as shown on the bottom of Figure 2 in order to abate vibrations" Exhibit 1, page 3, and Figure 2, page 20)."

-13-

(A00453-454). The Court then turned to the six raised triangles on the lid of the canister, stating:

> "After searching through the specification and claims, the plaintiffs find no text discussing six raised triangles. Instead, the plaintiffs argue that the top surface of the lid is not described in the specification. But the written description element requires more than a specification that is compatible with the claimed subject matter; the application must describe the subject matter. The written description requirement ensures that the inventor possessed the claimed subject matter, not that the inventor had not excluded the subject matter. FN10 In re Owens, 710 F.3d 1362, 1366 (Fed. Cir. 2013)".

(A00016). A review of the drawings of the '414 application, in particular Figure1 1,2, and 5, demonstrate the presence of a raised area on the upper surface of the lid. This raised area is not described in the specification, but it does appear in the drawings as being raised (Figure 2). This raised area is not claimed in the '414 grandparent.

The specification of the '414 application does not teach a flat, planar upper surface of the lid. The specification teaches:

> "A lid is next provided. The lid is positioned over the upper end of the exterior housing. A central aperture and a plurality of slots are provided through the lid. A horizontal slot in the lid receives a projection formed in the exterior housing to secure the coupling there between".

(A00455). To determine the sufficiency of a disclosure for the purpose of §112 analysis, the Court stated:

> "The test for sufficiency of the written description, which is the same for either a design or a utility patent, has been expressed as "whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." (Citing; Ariad Pharm., Inc. v. Eli

-14-

Lilly & Co., 598 F.3d 1336, 1351 (Fed.Cir.2010) (en banc)).

In re Owens, 710 F.3d 1362, 1366, C.A.Fed.,2013. Plaintiffs suggest that a test for the determination of §120 applicability may be used. The test may be as follows. To test the disclosure, one could formulate a claim, based on the parent disclosure, and determine if that claim would support the claim at issue in the subsequent application or patent, such as the drawings in a design patent. In the present case, a claim for a raised area on the upper surface of the lid would be supported by the parent disclosure. So, too, would that claim also describe the raised area on the upper surface of the lid in the design patent, sufficient to clearly convey to one skilled in the art that the inventor had possession of that subject matter. A claim in the '414 application, for a raised area on the upper surface of the lid, would be supported by the '414 application specification and drawings. A claim to a raised area on the surface of the lid, without describing the shape or location, would encompass a raised reinforcement area, as is present in the '474 design patent. The claims language, so stated, would include the raised portion of the '474 design.

Plaintiffs contend that the drawings of the '414 application, showing a raised area on the upper surface of the lid is sufficient information to one skilled in the art, to understand that the inventor had possession of the '474 device at the time of the

filing of the '414 application.

> "In general, precedent establishes that although the applicant "does not have to describe exactly the subject matter claimed, ... the description must clearly allow persons of ordinary skill in the art to recognize that [the applicant] invented what is claimed." In re Gosteli, 872 F.2d at 1012, 10 U.S.P.Q.2d at 1618 (citations omitted)".

In re Daniels, 144 F.3d 1452, 1456,C.A.Fed.,1998.

The issue, which is not discussed in the Court's opinion, is whether one skilled in the art would recognize that the inventor was in possession of the invention.

> "35 U.S.C. § 112, first paragraph, requires a "written description of the invention" which is separate and distinct from the enablement requirement. The purpose of the "written description" requirement is broader than to merely explain how to "make and use"; the applicant must also convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention. The invention is, for purposes of the "written description" inquiry, whatever is now claimed".

Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1564, C.A.Fed. (Ill.),1991.  As noted by this Court,

> "In proper circumstances, drawings alone may provide an adequate written description under §112 if they describe what is claimed and convey to those of skill in the art that the patentee actually invented what is claimed. Cooper Cameron Corp. v. Kvaerner Oilfield Prods., 291 F.3d 1317, 1322 (Fed.Cir.2002) (internal citation omitted); see also Vas-Cath, Inc. v. Mahurkar, 935 F.2d 1555, 1563 (Fed.Cir.1991). In cases involving dimensions, the test is whether one skilled in the art could derive the claimed dimensions from the patent's disclosure. Vas-Cath, 935 F.2d at 1566 (citation omitted)".

Cummins-Allison Corp. v. SBM Co., Ltd., Slip Copy, 2012 WL 1890153, page 5, C.A.Fed. (Tex.),2012.  It can be seen from the language of the SBM Court, supra, that the exactness required by

the District Court is not required, in that one skilled in the art could "derive the claimed dimensions from the patent's disclosure". Given that the drawings show a raised area on the lid, one skilled in the art could derive the dimensions of that raised area, which includes what the raised are would eventually look like.

> "When the earlier disclosure is less than clear on its face, courts have explained that the prior application must "necessarily" have described the later claimed subject matter. <u>Kennecott Corp. v. Kyocera Int'l, Inc.</u>, 835 F.2d 1419, 1423, 5 U.S.P.Q.2d 1194, 1198 (Fed.Cir.1987). In general, precedent establishes that although the applicant "does not have to describe exactly the subject matter claimed, ... the description must clearly allow persons of ordinary skill in the art to recognize that [the applicant] invented what is claimed." <u>In re Gosteli</u>, 872 F.2d at 1012, 10 U.S.P.Q.2d at 1618 (citations omitted)".

<u>In re Daniels</u>, 144 F.3d 1452, 1456, C.A.Fed.,1998.

The Court then considered the locking slots of the '474 design, in view of the drawing of the locking mechanism of the '414 utility grandparent. Spencer pointed to the specification of the '414 which teaches:

> "Next provided are security in components between the lid and the exterior housing. The security components include adjacent holes in the lid and the exterior housing and a padlock for selectively locking and unlocking the lid onto the exterior housing to secure coins within the housings".

(A00454-455)(referring to A99353). This form of security components is not claimed in the '414 application. However, a claim for "security components having adjacent holes in the lid and holes in the exterior housing" would be supported by the specification of the '414. This information would give one skilled

in the art to understand that the applicant invented what is claimed by the '474 design patent. Plaintiff contends that the drawings of the '414 application (A00368 and 370, Fig. 1,2, and 5) show a loop on the exterior housing, and not a hole there through, as described in the specification passage cited by Plaintiffs. The '474 patent shows adjacent holes in the lid and the exterior housing, as described in the '414 application.

The Court looks to the petals (referred to in documents as "pedals" (a typographical error of Plaintiff's doing)), finding that the drawings do not show the same identical angular relationship between the petals, with the District Court requiring that the specification relied upon to teach the angle between the petals. Spencer contends that one skilled in the art would view the drawings of the '414 application and understand that the inventor was in possession of the invention shown in the '474 design patent as to the petals.

The Court looks for an exact description in the '414 application. Such exactness is not required under Vas-Cath, 935 F.2d at 1566. The specification of the '414 does not describe any particular angle between the petals. The range of angulation would be included within the possibilities of the structure, which would be 360 degrees. One skilled in the art of coin drop games, through "ordinary experience" would recognize that the petals should be angled so as to allow the coin to drop from one petal to another

-18-

Case: 14-1097    CASE PARTICIPANTS ONLY    Document: 16    Page: 34    Filed: 12/26/2013

(otherwise the game would not work), which would support the arrangement found in the '474 patent.

The Court also holds that the petals of the '414 application are "thinner" (Doc 94, p 9). The specification of the '414 does not describe any particular thickness, and under Vas-Cath, one skilled in the art would be able to understand that the applicant invented that aspect of the '474 patent at the filing date of the '414 application.

> "[T]he proper test is whether the drawings conveyed with reasonable clarity to those of ordinary skill that Mahurkar had in fact invented the catheter recited in those claims,.... Consideration of what the drawings conveyed to persons of ordinary skill is essential. See Ralston Purina, 772 F.2d at 1575, 227 USPQ at 179 (ranges found in applicant's claims need not correspond exactly to those disclosed in parent application; issue is whether one skilled in the art could derive the claimed ranges from parent's disclosure)".

Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1566, C.A.Fed. (Ill.),1991. The lack of exactness, which is the focal point of the Court's analysis, is not required. Rather, the focus should have been on what one skilled in the art would understand when considering the teachings of the '414 application.

> "The court saw no reason to deny the applicants a claim to inert fluids when the "concept of using 'inert fluids' would naturally occur to one skilled in the art from reading" the description of the segmentizing medium's properties in the parent disclosure". (Citing In re Smythe, 480 F2.d at 1384).

In re Curtis, 354 F.3d 1347, 1356, C.A.Fed.,2004. In this case the technology is simple. The '474 patent is a coin drop game. The structure of the petals would lead one skilled in that

-19-

art to understand that the inventor had possession of the game in the '474 patent upon the filing of the '414 application. Moreover the "'disclosure need only reasonably convey to person skilled in the art that the inventor had possession of the subject matter in question' (citing Fujikawa, 93 F.3d at 1570)" ICN Photonics, Ltd. v. Cynosure, Inc., 73 Fed.Appx. 426, 429, C.A. Fed., 2003. "[T]he parent application must actually or inherently disclose the elements of the later filed claims" (citing PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1306 (Fed.Cir.2008) Research Corp. Technologies, Inc., v. Microsoft, Corp., 527 F3d 859, C.A. Fed. 2010.

Some of the differences found by the District Court may fall within the realm of Genus / Species analysis. The relation of the two sets was found to have interplay in the Ariad case decided by the Federal Circuit. In that case, the Court (en banc) stated:

> "We held that a sufficient description of a genus instead requires the disclosure of either a representative number of species falling within the scope of the genus or structural features common to the members of the genus so that one of skill in the art can "visualize or recognize" the members of the genus. Id. at 1568-69. We explained that an adequate written description requires a precise definition, such as by structure, formula, chemical name, physical properties, or other properties, of species falling within the genus sufficient to distinguish the genus from other materials. Id. at 1568 (quoting Fiers v. Revel, 984 F.2d 1164, 1171 (Fed.Cir.1993))".

Ariad Pharmaceuticals, Inc. v. Eli Lilly and Co., 598 F.3d 1336, 1350, C.A.Fed. (Mass.),2010. The Ariad Court further stated:

> "In other words, the test for sufficiency is whether the

disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date. Id. (quoting Ralston Purina Co. v. Far-Mar-Co, Inc., 772 F.2d 1570, 1575 (Fed.Cir.1985)); see also In re Kaslow, 707 F.2d 1366, 1375 (Fed.Cir.1983)".

Ariad, at 1351.   In the present case, the '414 application describes a member of the genus, which, has structural dimensions. The '474 application claims variations of the dimensions, which would be within the genus taught by the '414, such as the petals, the corners of the base, or the pads on the bottom of the base. All are within the common knowledge of one skilled in the art, and all are species of the genus of each feature, which is taught by the '414 application.

> "SK is correct that a "disclosure of a species may be sufficient written description support for a later claimed genus including that species." Bilstad v. Wakalopulos, 386 F.3d 1116, 1124 (Fed.Cir.2004) (emphasis added). But, as we stated in Bilstad:
> [i]f the difference between members of [a species] is such that [a] person skilled in the art would not readily discern that other [species] of the genus would perform similarly to the disclosed members, i.e., if the art is unpredictable, then disclosure of more species is necessary to adequately show possession of the entire genus.
> Id. at 1125. In other words, predictability is a factual issue judged on a case-by-case basis. Here, SK presented its case to the jury, and the jury inferred that, in the field of intervertebral implants, the disclosure of peripheral grooves does not adequately demonstrate possession of the entire genus of possible openings. Because the jury's verdict is supported by substantial evidence, we must defer to that finding".

Synthes USA, LLC v. Spinal Kinetics, Inc., --- F.3d ----, 2013 WL 5788675, C.A.Fed. (Cal.),2013.

-21-

The Court holds that "[t]he '414 application depicts a "base support plate" with "six outwardly extending fingers"; the '474-patent drawings depict no fingers" (A00018). However, viewing A00008, Figs. 5 and 6, below, one can see the six fingers in the top and bottom views as rounded structures within the outside wall of the container.



FIG. 5                FIG. 6

The Court further dissects the '474 disclosure finding that the "pedestal [base] of the '414-application canister has squared edges, but the pedestal in the '474 patent has rounded edges" (A00009). The specification of the '414 teaches a lower base plate 14 in which "[t]he lower base also has vertical side walls between its lower plate and open top. The lower base is formed in a six-sided symmetrical configuration. Other configurations could readily be utilized". As such the specification is not limited to rounded or squared corners, and one skilled in the art, without

-22-

such a limitation, could readily understand that '414 application discloses such a configuration. Moreover, a six sided symmetrical side walls is a genus description of a species having rounded corners rather than straight corners, and such description would lead one skilled in the art to recognize that Spencer, at the time of filing the '414 application, had invented the embodiment which appeared in the Claim of the '474 issued design patent.

The Court, in summary regarding its analysis states:

> "The plaintiffs look beyond the drawings of the '414 application to the vague claims and the vague specification of the application and argue that the text "teaches" (or is, at least, compatible with) each distinction. The plaintiffs are mistaken to look to the claims and specification for more than a description of the drawings. But even accepting the plaintiffs' approach, the written description remains insufficient: for each difference, the text of the '414 application either adds nothing to the drawings or further clarifies that the '414-application drawings are incompatible with the '474-patent drawings".

(A00018-19). The design patent drawing is a claim. The analysis first looks to whether the claim is supported by the specification. In Mahurkar, the N.D Ill. Court stated:

> "A claim term can be limited to the described preferred embodiment only when the specification clearly and unambiguously so limits that term...6
> FN6...It is black letter law that a specification (or drawing) need not describe every possible embodiment covered by the claim to satisfy the written description requirement. See, e.g., Johnson Worldwide Assoc., 175 F.3d at 993. See also Lampi Corp. v. Am. Power Prods., Inc., 228 F.3d 1365, 1378 (Fed.Cir.2000)".

Mahurkar v. Arrow Intern., Inc., 160 F.Supp.2d 927, 937

N.D.Ill.,2001.

**Issue 3.** Did the District Court err in its analysis as to infringement of the accused device compared with the drawing of the patent at issue by applying an element by element analysis rather than the "ordinary observer" test.

The Court, lastly, turned to the issue of infringement, holding that "assuming the '474 patent is valid, the plaintiff must prove that TBD and TBF's canister infringed the '474 patent" (A00021). The Court identified seven distinctions between the '474 patent and the accused canister, being:

> "1. The bottom of the chamber of the accused canister is flat, but the '474-patent canister has a dome-shaped base plate at the bottom of the chamber.
> 2. The accused canister has a flat lid, not a lid with six raised triangles.
> 3. The accused canister's lid has no lock wells, but the lid on the '474-patent canister has three lock wells.
> 4. The accused canister's lid rests inside the walls of the chamber, but the lid on the '474-patent canister fits over and around the walls of the chamber.
> 5. The accused canister includes a pedestal that is wider than the chamber; the pedestal of the '474 patent is thinner than the chamber.
> 6. The accused canister is supported by two opposing support rods, but the '474-patent canister has no support rods.
> 7. The accused canister has squared edges, but the '474-patent canister has rounded edges".

(A00022 - 23). The Court listed the differences and then stated, "[n]o reasonable jury could find that the seven distinctions identified by the defendants pass unnoticed by an ordinary observer" (A00023).

-24-



rear
FIG. 1

front
FIG. 2

right side
FIG. 3

left side
FIG. 4



FIG. 5
top

bottom
FIG. 6

The left and middle images above show the '474 drawing along side a photograph of the accused device, are taken from Dr. Stern's Report (A01224-1126). The right image is take from the Court's amended order (A00024). Plaintiff places them side by side to demonstrate the differences, or similiarities, in appearance of the '474 device and the accused device from that of the '801 device.

> "The law of design patent infringement is stated in Gorham Co. v. White, 81 U.S. 511, 14 Wall. 511, 20 L.Ed. 731 (1871), as whether "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, [the] two designs are substantially the same." Id. at 528. In Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665 (Fed.Cir.2008) (en banc) the court confirmed that "in accordance with Gorham ... we hold that the 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed." Id. at 678".

> Revision Military, Inc. v. Balboa Mfg. Co., 700 F.3d 524, 525 C.A.Fed. (Vt.),2012.

> " As stated in L.A. Gear, Inc. v. Thom McAn Shoe Co., 988

-26-

F.2d 1117, 1125 (Fed.Cir.1993), "[i]n conducting [infringement] analysis the patented design is viewed in its entirety, as it is claimed." See <u>Gorham Co. v. White</u>, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871) (infringement is determined by visual comparison of the pictured design and the accused article)".

<u>Hall v. Bed Bath & Beyond, Inc.</u>, 705 F.3d 1357, 1363, C.A.Fed. (N.Y.),2013.

For prior art comparison, the Court refers to the '801 patent canister, patented in 2000, pictured above. The Court does not identify that the '801 canister had a round internal wall which contains the petals (making the petals shorter than those of the '474 patent), or that the '801 was filled with water between the outside hexagonal wall and the inner circular wall. Nor does the court identify that the '801 device was powered electrically to run the bubbler pumps. The drawings cited by the Court (A00023, 24) depict a hexagonal water jacket around a round inner wall, necessitating that the petals be substantially shorter than those of the '474 patent. In the above figure, it appears that the circular containment wall is about one half inch wide, necessitating that the petals be less than one forth inch long from the turning point to the outermost end. With the overall side to side dimension being three quarters of an inch (measuring the provided drawing of the '801 device), the length of the petals in

the patent may be three eighths of an inch long.  This means that
the petals of the '474 patent have about a fifty percent increase
in length.   It should be noted that the '801 application does
teach a longer petal with the removal of the water jacket (A00336,
Col 6, L 31 - 41).   In this instance the entire '801 device would
be water filled.





'801, Fig. 5 (A00332)          '414 application Fig.5 (A00005)

     Moreover, the Court had not identified that the shaft of the
'801 patent shows a stepped configuration of the central shaft.
The shaft of the '414 patent application, the shaft of the '474
patent, and the accused device each have a non-stepped central
shaft between the petals, as shown at A00007 and A00022.
     While the "point of novelty" test is not longer applicable,
the novelty analysis is still pertinent when considering prior art,
the patent, and the accused device.  The closest prior art is the

'801 patent, which shows a device having a water compartment filled with water, the water compartment having bubblers, a power source, and an internal cylindrical clear wall separating the water jacket and the coin compartment. The '801 turning handle is hexagonal and the shaft is stepped between the petals.

> "By examining the prior art fruit juicers, the court was able to identify the "novel elements embodied in the [patented] design."

Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 675, C.A.Fed. (Tex.),2008.

The infringement analysis is not, however, simply looking to the patent drawings, the device, and the prior art in instances where there is a mixture of functional elements and ornamental elements. The Court must, first, discount the functional aspects, or elements, of the design patent, and then compare the ornamental features of the design patent to the accused device. In carrying out its infringement analysis, the Court failed to separate out those features which are functional, and not ornamental. In doing so, the Court included both functional and ornamental aspects to be considered in the scope of the claim and the infringement analysis. As stated in the Richardson case, the Federal Circuit stated:

> "The district court here properly factored out the functional aspects of Richardson's design as part of its claim construction. By definition, the patented design is for a multi-function tool that has several functional components, and we have made clear that a design patent, unlike a utility patent, limits protection to the ornamental design of the article. Lee v. Dayton-Hudson Corp., 838 F.2d 1186, 1188 (Fed.Cir.1988) (citing 35 U.S.C. § 171). If the patented

design is primarily functional rather than ornamental, the patent is invalid. Id. However, when the design also contains ornamental aspects, it is entitled to a design patent whose scope is limited to those aspects alone and does not extend to any functional elements of the claimed article. See L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1123 (Fed.Cir.1993) ("The elements of the design may indeed serve a utilitarian purpose, but it is the ornamental aspect that is the basis of the design patent.")".

Richardson v. Stanley Works, Inc., 597 F.3d 1288, 1293-94, C.A.Fed. (Ariz.),2010. In the present case the Court did not factor out those aspects which were functional. Defendants identified and argued the elements which it considered to be functional, stating:

"The six triangles on the top lid are for the purpose of strengthening the top lid. Exh. B at 269-70, Exh. C at 22 23 [(A00285)(see also A01099)], 154-55 [(A01132)].
The lock wells are for the purpose of securing the top lid to the hexagonal housing. Exh. B at 249-51 [(A00738, L 18 - A00739, L 15)].
The enclosing top lid is for the purpose of preventing slipping object into the game and preventing theft. Exh. N at TBFPOO 1792-93 [(A00403-404)].
The upper surface at the lower base that tapers downwardly is for the purpose of anchoring the center vertical rotating member, and preventing coins from amassing near the rotating member and providing more visibility of coins. Exh. N at TBFPOOl 795 [(A00406)], Exh. 0 at 00256 [(A00416)], Exh. L at 00289 [(A00378)].
The size and shape of the pedal are designed for the purpose of receiving coins and providing a desirable amount of wins. Exh. B at 232 [(A00273)], 237 [(A00275)], 246 [(A00276)].
The six elastomeric pads are designed to abate vibration and prevent slipping. Exh. K at 00323 [(A00351)], Exh. B at 00254 [(A00743)].
It is also obvious that the transparency of the hexagonal housing is dictated by function because a player must be able to see through the housing in order to manipulate the pedal levels and play the game".

(A00439-40). Defendants had argued that the "Plaintiffs

-30-

admit" that those items, listed above, are functional, though the record shows otherwise. Spencer, during his deposition specifically testified that the petals (referred to as "paddles") could be made in "any form" (A00772, L 13 - 00773, L 5). Spencer agrees with the Defendants' assertions that the lid, base with fingers, base, and clear hexagonal housing are functional, being that the form is dictated by the function each carries out. Spencer, however, testified that shape of the petals (paddles) are not dictated by function (A00772, L 13 - 00773, L 5), and are, hence, ornamental. Defendants also argue that the elastomeric pads are functional (A00440), citing to the Specification of the utility application (A00351), though Defendants offer no explanation how the anti-vibrational object of the pads dictates their round, disc-like configuration. Plaintiffs disagree that the pads are functional, in that the pads can have any one of a number of configurations and still carry out the purpose, that is, reduction of vibration through the canister.

In that Plaintiffs and Defendants are in agreement that the lid, rounded base, base, and clear hexagonal shape container are all functional, this leaves the central rotating shaft, the petals, the anti-vibrational pads, and the handle which rotates the petals, as the sole ornamental features to be considered by the Court in determining infringement. Given that the most pertinent prior art, the '801 patent, had short petals, which were encased within a

round container (separating the water from the coin compartment), one can readily see that the longer petals shown in the '474 patent drawings, and used by the accused TBF device are practically identical. The handle used to rotate the petals is also quite similar, whereas the handle used in the '801 device is hexagonal (A00329, 332), and not round as in the '474 patent (A00257) and the accused TBF device (A00321, 322).

> "[T]he proper inquiry [is], i.e., whether the accused design has appropriated the **claimed** design as a whole. See Amini Innovation Corp. v. Anthony Cal., Inc., 439 F.3d 1365, 1370-71 (Fed.Cir.2006); KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc., 997 F.2d 1444, 1450 (Fed.Cir.1993); Braun Inc., 975 F.2d at 820". (Bold mine).

Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 676-77, C.A.Fed. (Tex.),2008. Under the Egyptian Goddess rationale, the District Court should have, first, separated out the functional elements (under Richardson v. Stanley Works, supra), and then made its analysis as to whether the accused device appropriated the claimed design as a whole. In this instance, the claim analysis would turn on the central shaft, turning handle, paddles and rubber pads.

Plaintiffs contend that the District Court has assigned too critical an eye to the "ordinary observer" given the substantial similarity one perceives in viewing the side by side '474 drawings and the photographs of the accused device, shown in Dr. Stern's Report (A01224-1126) and supra.

**STANDARD OF REVIEW**

In this instance, the standard of review is determined by the appellate Court, in that the issues raised are particular to Patent law. The Federal Circuit's standard is that the Court "review a grant of summary judgment by a district court de novo". <u>Cortland Line Co. v. Orvis Co.</u>, 203 F.3d 1351, 1355-56 (Fed.Cir.2000). The Federal Circuit Court of Appeals (FCCA) stated:

> "Summary judgment is appropriate where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A district court may not resolve infringement on summary judgment unless no genuine factual issue remains".

<u>Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.</u>, 262 F.3d.1258, 1265 (Fed.Cir.2001). The issues are whether the District Court applied the proper evaluation, which leads, in turn, to the issue of whether the proper "facts" were considered, in reaching the decision to grant summary judgment.

> "We review de novo the court's grant of summary judgment, drawing all reasonable inferences in favor of the nonnmovant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)".

<u>Edwards Lifesciences LLC v. Cook Inc.</u>, 582 F.3d 1322, 1335, C.A.Fed. (Cal.),2009.

**CONCLUSION**

The threshold issue is one of whether priority applies. Plaintiffs contend that a study of the preceding parent utility application supports the Claim of the '474 design patent, issued to

Plaintiff, Spencer. Given the applicability of priority in this matter, the Court would then be required to construe the Claim, meaning that the Court would discount those elements which were functional, and consider only those items which were ornamental. It appears from the parties positions that the lid, outer wall, base and internal base are functional, leaving only the turning handle, the shaft and the petals as being ornamental, and subject to consideration in any infringement analysis. The Plaintiffs submit that the Court should find that priority is proper as to the filing date of the '414 utility application and that there are sufficient material issues of fact to require this matter be resolved at trial. The Plaintiffs, therefore, request that this Court vacate the District Court's order, and that the matter be remanded to the District Court for proper procedures therein.

Dated: December 24, 2013

> Respectfully submitted,
>
> /s/ Edward P. Dutkiewicz
>
> Edward P. Dutkiewicz
>
> FL Bar # 0883387
>
> PO Box 937
>
> Dade City, Florida 33526
>
> Tel: (352) 467-2682
>
> Fax: (352) 567-5526
>
> Attorney for Defendant/Appellants

-34-

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WAYNE SPENCER and MACH 5
LEASING, INC.,

    Plaintiffs,

v.                                 CASE NO.: 8:12-cv-387-T-23TGW

TACO BELL CORP., et al.,

    Defendants.

_____/

## AMENDED ORDER[1]

Wayne Spencer and Mach 5 Leasing, Inc., sue (Doc. 7) Taco Bell Corporation

(TBC) and Taco Bell Foundation, Inc. (TBF), and allege infringement of U.S. Patent

No. D643,474, a patent issued on August 16, 2011. TBC and TBF now move

(Doc. 69) for summary judgment.

## BACKGROUND

The '474 patent, entitled "Coin Drop Game," covers the design features of a

one-player game. To play the game, a user drops a coin into the top of a chamber

shaped like a hexagonal prism. The chamber sits on a pedestal shaped like a

---

[1] This amended order changes the instructions to the clerk.

hexagonal prism. Controlled by a central, vertical shaft, ten pie-shaped "pedals"[2] are inside the chamber. The design permits the user, as the coin falls, to turn the shaft in an attempt to catch the coin on a higher-level pedal and manipulate the pedal to achieve a controlled transfer of the coin to a lower-level pedal and, thence, to the winning of a prize.

The prosecution history of the '474 patent involves several patents and applications:

- The '474 patent issued on August 16, 2011, from U.S. Design Patent Application 29/373,021.

- Spencer filed the '021 application on February 18, 2011, as a continuation-in-part of U.S. Patent Application 12/316,419.

- Spencer filed the '419 application on December 12, 2008, as a continuation-in-part of U.S. Patent Application 10/746,414.

- Spencer filed the '414 application on December 24, 2003.

Before prosecuting the '414 application, Spencer filed a patent application for a similar coin game on October 10, 2000. A patent, U.S. Patent 6,367,801, issued for the game on April 9, 2002.

Starting in 2006, Spencer placed on sale and in public use a coin game under the name "Mach 5" or "Mach 5 Canister." The Mach 5 is the canister patented in the '474 patent, issued on August 16, 2011.

---

[2] The parties occasionally label the "pedals" as "paddles"; the patents and applications label the "pedals" as "coin-receiving surfaces." Although the parties might have chosen "pedals" mistakenly, actually meaning floral "petals," which the "pedals" resemble, to avoid further confusion, this order uses "pedals."

The '414 application and the '474 patent are somewhat similar, but no drawing from the '414 application appears in the '474 patent.  The '414 application drawings are below[3]:



_____

[3] The '414 application includes two figures that illustrate a sign designed for placement on the canister and that are not displayed in this order.



FIG 3

FIG 4



FIG 5

The '474-patent drawings are below:



FIG. 1                    FIG. 2





FIG. 3                    FIG. 4



FIG. 5                          FIG. 6

The canisters depicted in the '414 application and the '474 patent have six

distinguishing features.  First, the lid drawn in the '414 application has a flat surface,

but the lid drawn in the '474 patent has six raised triangles.  Second, the lid in the

'414 application has a single slot on the side for use with a padlock.  The '474-patent

lid has no slot on the side; instead, the lid has three lock wells.  Third, the bottom of

the '474-patent canister, which is drawn separately, has a circular pad placed near

each of the six vertices of the pedestal.  The '414 application includes no drawing of

the bottom of the canister.  The '414 application includes a perpendicular view from

the side, and two pads on the bottom of the canister are visible in the drawing.  But

each pad has an unidentifiable shape and is not necessarily placed at the vertices of

the pedestal.  Also, if the bottom of the '414-application canister had six pads

arranged as the pads are arranged on the '474-patent canister, the perpendicular side

view would show four pads.  But the '414 application's perpendicular side-view

drawing shows only two pads.  Fourth, the views from the top of each canister show a difference in the layout and the width of the pedals.  The drawing in the '474 patent shows that the pedals are wide enough, and properly arranged, to occupy, if viewed from above, nearly 360 degrees.  However, the '414 application shows pedals that are thinner and arranged differently.  The result is (1) that the pedals of the '414-application canister, if viewed from above, occupy substantially less than 360 degrees[4] and (2) that the top and middle pedal-levels of the '414-application canister have parallel axes, but the corresponding axes in the '474 patent are skewed.[5]  Fifth, the '414 application depicts a "base support plate" at the bottom of the chamber with "six outwardly extending fingers."  The '474-patent drawings depict the base plate poorly, but the drawings include enough detail for a viewer to see that the base plate has no fingers.  Sixth, the pedestal of the '414-application canister has squared edges, but the pedestal in the '474 patent has rounded edges.

On February 23, 2012, the plaintiffs sued TBC and TBF for infringement of the '474 patent and for enhanced damages for willful infringement.  The plaintiffs argue that TBC and TBF have infringed the '474 patent through the use of a similar canister.  TBC and TBF argue (1) that the '474 patent is invalid under the on-sale bar,

---

[4] In other words, a viewer looking directly down on the '414-application canister can easily see the bottom of the canister through the five layers of pedals.  However, a viewer looking directly down on the '474-patent canister has the viewer's vision almost entirely obstructed by the pedals.

[5] The axes of the '414-application canister and the '474-patent canister are dissimilar in other specifics, but a comparison of the top- and middle-level axes of each canister shows the most representative and visible difference.

(2) that the '474 patent is invalid because the canister's ornamental design is dictated by function, (3) that the accused canister does not infringe the '474 patent, and (4) that the plaintiffs cannot prove willful infringement.

## DISCUSSION

*1. On-Sale Bar*

If "described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States," a patent is invalid under the on-sale bar.  35 U.S.C. § 102(b).  If a patent application's filing date otherwise invalidates the patent under Section 102(b), the filing date of a parent application becomes conditionally available.  *SunTiger, Inc. v. Scientific Research Funding Grp.*, 189 F.3d 1327, 1334 (Fed. Cir. 1999).

Entitlement to a parent application's filing date presents a question of law.  *In re Owens*, 710 F.3d 1362, 1366 (Fed. Cir. 2013).  To use a parent's effective filing date, a patent's parent application must include a description of the subject matter of the patent, and that written description must comply with Section 112.  *In re Daniels*, 144 F.3d 1452, 1456 (Fed. Cir. 1998).  "Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party."  *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008).  The

written description element of a valid patent requires that "the disclosure of the

application relied upon reasonably convey[] to those skilled in the art that the

inventor had possession of the claimed subject matter as of the filing date." *Owens*,

710 F.3d at 1366 (quoting *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351

(Fed. Cir. 2010) (en banc)).

For a design patent, the sole disclosure method is a drawing. *Vas-Cath Inc. v.*

*Mahurkar*, 935 F.2d 1555, 1564 (Fed. Cir. 1991). Thus, the written description

requirement for a design patent is applied against a drawing. *Daniels*, 144 F.3d

at 1456. Similarly, if a design patentee relies on a parent application to achieve an

earlier effective filing date, the written description requirement is applied by looking

to the parent's drawings (and the text describing the drawings), even if the parent

application is for a utility patent. As the Federal Circuit, explains:

> [A] design . . . can be described only by illustrations showing
> what it looks like (though some added description in words
> may be useful to explain the illustrations). As a practical
> matter, meeting the remaining requirements of § 112 is, in the
> case of an ornamental design, simply a question of whether the
> earlier application contains illustrations, whatever form they
> may take, depicting the ornamental design illustrated in the
> later application and claimed therein by the prescribed formal
> claim.

*Racing Strollers, Inc. v. TRI Indus., Inc.*, 878 F.2d 1418, 1420 (Fed. Cir. 1989); *accord*

*Owens*, 710 F.3d at 1366 ("[W]hen an issue of priority arises under § 120 in the

context of a design patent prosecution, one looks to the drawings of the earlier

application for disclosure of the subject matter claimed in the later application.);

*Daniels*, 144 F.3d at 1456 ("Thus[,] when an issue of priority arises under § 120, one

looks to the drawings of the earlier application for disclosure of the subject matter

claimed in the later [design patent] application.").

The plaintiffs argue that, in addition to consideration of the drawings of the

parent application, the written description test includes consideration of the claims of

a parent utility application. For support, the plaintiffs identify an uncited portion of a

report and recommendation for *E-Z Bowz, LLC v. Professional Product Research*

*Company*, 2003 WL 22068473 (S.D.N.Y. Sept. 5, 2003), report and recommendation

adopted, 2005 WL 535065 (S.D.N.Y. Mar. 8, 2005). However, to the extent *E-Z*

*Bowz* purports to authorize consideration of the claims of a parent utility patent to

expand a later design patent, *E-Z Bowz* stands athwart binding Federal Circuit

authority. *See Owens*, 710 F.3d at 1366; *Daniels*, 144 F.3d at 1456; *Racing Strollers,*

*Inc.*, 878 F.2d at 1420.

Arguing that application of the written description test includes consideration

of the specification of the parent utility application, the plaintiffs quote *Utter v.*

*Hiraga*, which says, "A specification may, within the meaning of 35 U.S.C. § 112 ¶ 1,

contain a written description of a broadly claimed invention without describing all

species that claim encompasses." 845 F.2d 993, 998 (Fed. Cir. 1988). However, the

plaintiffs apply the precedent out of context; *Utter* involved a utility patent, not a

design patent. Because of the difference between a design patent and a utility patent,

the principle is inapplicable in this design-patent context.[6] *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988) ("Design patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings."); *see also Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1464 (Fed. Cir. 1997) ("A design patent contains no written description; *the drawings are the claims* to the patented subject matter." (emphasis added)); *Racing Strollers, Inc. v. TRI Indus., Inc.*, 878 F.2d 1418, 1420 (Fed. Cir. 1989) (explaining that the "best mode" requirement, which no longer exists, could not apply to design patents because a design has only one mode); *Ex*

---

[6] Although not cited by the plaintiffs, some support for considering the text of a parent application exists in *In re Salmon*, 705 F.2d 1579 (Fed. Cir. 1983), which decided whether a parent application for a square-seated stool sufficiently described a design for a circle-seated stool in a subsequent application. The Federal Circuit said:

> The parent application disclosed only a stool with a square seat, not one with a round seat. The parent application claimed "an original design for a Stool as shown." The stool as shown in the drawings was depicted in three-dimensional sketches that showed a square seat. Similarly, the *specification* in the application described figure 1 in the drawings as "a general perspective view of the front of a stool embodying our new design."

> Nothing in *the text of the application* or the attached drawings even intimated that the square shape of the seat was not an integral element of "our new design" for a stool. Nothing in the application indicated that the design for which a patent was sought was anything less than the stool "as shown." Neither *the text of the application* nor the drawings even suggested that the design consisted of only the tubular portion of the stool and not the seat.

*Salmon*, 705 F.2d at 1581 (emphasis added). In light of the last sentence of the first quoted paragraph and other Federal Circuit precedent, the better interpretation of *Salmon* is that the text of the parent application may describe, but neither expand nor contradict, the drawings in the application. *See, e.g.*, *Racing Strollers, Inc. v. TRI Indus., Inc.*, 878 F.2d 1418, 1420 (Fed. Cir. 1989) ("[A] design . . . can be described only by illustrations showing what it looks like (though some added description in words may be useful to explain the illustrations).").

*Parte* Hanback, 231 USPQ 739, 741 (Bd. Pat. App. & Int'f 1986) ("[I]n design applications, an amendment to the drawing is an amendment to the claim.").

TBC and TBF argue, and the plaintiffs have not disputed, that Spencer placed the design of the '474 patent into public use, as the Mach 5, more than a year before Spencer filed the '021 application.[7]  In response, the plaintiffs argue that the '474 patent is entitled to the filing date of the '414 application, a parent application of the '474 patent.  TBC and TBF agree that the '414-application filing date would save the '474 patent from the on-sale bar, but TBC and TBF argue (1) that the plaintiffs have the burden of proving the '474 patent's entitlement to the earlier filing date and (2) that the '474 patent is not entitled to the filing date of the '414 application.

The differences between the drawings of the '414 application and the '474 patent are fatal.  Ordinarily, a patent is presumed valid.  *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1303 (Fed. Cir. 2008).  But "[i]n the absence of an interference or rejection which would require the [examiner] to make a determination of priority," the burden shifts to the patentee to show the patent is entitled to the earlier date.  *PowerOasis, Inc.*, 522 F.3d at 1305.

Not knowing of the Mach 5 during prosecution, the patent examiner had no occasion to consider whether the '474 patent could benefit from the earlier filing date

---

[7] Spencer put the Mach 5 into public use as early as 2006, and he filed the '021 application in 2011.

of the '414 application.  Thus, the plaintiffs have the burden of demonstrating the

right to the filing date of the '414 application.

The drawings of the '414 application and the drawings of the '474 patent

depict a different canister, and the plaintiffs have not argued otherwise.  Instead, the

plaintiffs argue that the claims and the specification of the '414 application "teach"

each difference (or are, at least, not in conflict with any difference).  Each of the

plaintiffs' arguments fails.

In addressing the six pads on the base of the '474-patent canister, the plaintiffs

note that the '414 application specifies that "pads are secured to the lower face of the

lower base as shown on the bottom of Figure 2."  (Doc. 74-1 at 11)  The plaintiffs'

argument is misguided; the written description requirement looks to the drawings

and consults the specification only to describe the drawing.  The specification in the

'414 application cannot save the drawings because the drawings are inconsistent with

the six-pad arrangement found in the '474 patent[8]: the perpendicular side-view

drawing in the '414 application shows only two pads, but a similar view of the '474-

patent canister would show four pads.[9]  Even if the specification could add to, or

detract from, the drawings, the language in the '414 application – which says that

_____

[8] Also, the shape of the pads on the bottom of the '414-application canister is not drawn, but the '474 patent depicts circular pads.

[9] Figures 1 and 2 of the '474 patent are perpendicular side views of the canister.  The drawings have five pads, not four.  Given the layout of the pads in Figure 6, which is more detailed, the artist most likely carelessly drew too many pads in Figures 1 and 2.  However, even if the five-pad drawings are correct, the perpendicular side-view drawings of the '474 patent show more than two pads.

pads are secured to the base "as shown" in the drawings – contributes nothing to the drawings.

The plaintiffs acknowledge that the lid of the '474 patent has six raised triangles that are absent from the drawings of the '414-application lid.  To reconcile the two lids, the plaintiffs look to the claims and the specification of the '414 application.  Unable to find language that describes (or even allows for) a different lid, the plaintiffs argue that the '414 application has "no limitations as to the smoothness or raised areas on the upper surface of the lid."  (Doc. 74 at 7)  Again, the plaintiffs' argument fails for looking to the text of the application for more than a description of the drawings.  But even accepting the plaintiffs' approach, the text of the application cannot save the drawings.  After searching through the specification and claims, the plaintiffs find no text discussing six raised triangles.  Instead, the plaintiffs argue that the top surface of the lid is not described in the specification.  But the written description element requires more than a specification that is compatible with the claimed subject matter; the application must describe the subject matter. The written description requirement ensures that the inventor possessed the claimed subject matter, not that the inventor had not excluded the subject matter.[10]  *In re Owens*, 710 F.3d 1362, 1366 (Fed. Cir. 2013).  Thus, the lack of a conflicting limitation is not sufficient to satisfy the written description requirement.

---

[10] The plaintiffs' view of the written description requirement would destroy the purpose of the requirement; the plaintiffs' view, if adopted, would reward vague patent applications – the more vague the language is, the less likely the language will conflict with the claimed invention.

The plaintiffs admit that the lid drawn in the '414 application is a "different variation" from the lid drawn in the '474 patent. (Doc. 74 at 6)  But the plaintiffs look to the specification for words that describe the '474-patent lid. The '474-patent specification explains, "Next provided are security in [sic] components between the lid and the exterior housing.  The security components include adjacent holes in the lid and the exterior housing and a padlock for selectively locking and unlocking the lid onto the exterior housing to secure coins within the housings." (Doc. 74-1 at 6) Unlike other words from the specification that the plaintiffs have provided, these words help to describe the drawings in the '414 application.  But the drawings of the '414-application lid (even if viewed in light of the descriptive language in the specification) and the '474-patent lid remain distinguishable.  The lip of the '414-application lid has a slot, and the side of the chamber wall has a corresponding hole; the two fit together for use with a padlock.  However, the lid of the '474 patent uses a different locking mechanism – three locking wells that extend into the lid.

The plaintiffs have not disputed the differences between the pedals of the '414 application and the pedals of the '474 patent, i.e., the differently sized and differently aligned pedals.  Instead, the plaintiffs say that TBC and TBF are mistaken in "rel[ying] entirely on the drawings of the '414 patent application." (Doc. 74 at 8) "Nowhere in the specification [or] the claims," the plaintiffs say, "is there a limitation of a specific degree between the [pedals], or a specific alignment required." (Doc. 74 at 8)  Again, the plaintiffs' argument fails for relying on the text of the '414

application for more than a description of the drawings. But even considering the specification and claims separately, the plaintiffs' argument fails for the same reason identified when considering the six raised triangles: the pedals in the '474 patent are not described in the specification of the '414 application.[11] The plaintiffs argue that the alignment of the pedals is not described in the specification of the '414 application. But the written description element requires more than a specification that is merely compatible with the claimed subject matter; the application must describe, that is, disclose, the subject matter.

The plaintiffs have not addressed the remaining two differences between the '414-application canister and the '474-patent canister because TBC and TBF failed to identify those differences. The '414 application depicts a "base support plate" with "six outwardly extending fingers"; the '474-patent drawings depict no fingers. The pedestal of the '414-application canister has squared edges; the pedestal of the '474-patent canister has rounded edges. These two additional features of the canisters further distinguish the drawings.

In short, the drawings in the '414 application and the drawings in the '474 patent differ in six ways, and the plaintiffs' silence effectively concedes the differences. The plaintiffs look beyond the drawings of the '414 application to the vague claims and the vague specification of the application and argue that the text

---

[11] As discussed above, when viewed from the top of the canister, the pedals of the '474 patent occupy nearly 360 degrees.

"teaches" (or is, at least, compatible with) each distinction. The plaintiffs are mistaken to look to the claims and specification for more than a description of the drawings. But even accepting the plaintiffs' approach, the written description remains insufficient: for each difference, the text of the '414 application either adds nothing to the drawings or further clarifies that the '414-application drawings are incompatible with the '474-patent drawings.

While not just "any change in the design defeats a priority claim as a matter of law," *Daniels*, 144 F.3d at 1457, TBC and TBF need not identify significant differences between the '414-application canister and the '474-patent canister.

*Daniels* – one of the few decisions in which a design patentee acquired a parent application's filing date – finds a sufficient written description in the parent application, despite only one minor difference in the drawings. In the parent application, the patentee filed drawings of a "leecher," which is a trap used to catch leeches. The leecher had a design of a leaf printed on the side. In a later application, the patentee filed a design patent for a leecher and used the same drawings found in the parent application, except the new leecher had no leaf design.[12] The Federal Circuit found for the patentee and noted, "[T]he later claimed subject matter is contained in the earlier application. The leaf ornamentation in the parent application, superimposed upon the design of the leecher itself, does not obscure that

---

[12] The Federal Circuit provided three pictures from each of the two applications. *Daniels*, 144 F.3d at 1454-55. Figures 5 and 6 of the applications are identical, and Figure 1 is the same except for the leaf design.

design, which is fully shown in the parent application drawings." *Daniels*, 144 F.3d at 1457.

In *Owens*, the patentee submitted an application for, and obtained, a design patent on a bottle. 710 F.3d 1362, 1363 (Fed. Cir. 2013). Later, the patentee submitted another design application for a portion of the same bottle and sought the benefit of the parent application's filing date. Claiming the design of the top portion of the same bottle found in the parent application, the patentee merely drew a line through the parent application's bottle drawing to distinguish and to identify only part of the bottle. The Federal Circuit explained that the patentee based his argument on a misunderstanding of *Daniels*. Even though the patentee in *Owens* claimed the top portion of the same bottle – exactly as depicted in the parent application – and even though the parent application clearly depicted that portion of the bottle, *Owens* denied the availability of the parent application's filing date because the parent application failed to distinguish and identify the later-claimed portion.

Review of *Daniels*, *Owens*, and other cases,[13] demonstrates that the four differences identified by TBC and TBF (as well as the two additional differences identified in this order) are sufficient to defeat the plaintiffs attempt to claim the benefit of the '414 application's filing date. The drawings of the '474-patent canister depict a distinct canister: (1) no drawing is shared between the '414 application and

---

[13] *E.g., In re Salmon*, 705 F.2d 1579 (Fed. Cir. 1983) (finding that a patent for a stool with a round seat could not use the filing date of a parent application for the same stool with a squared seat).

the '474 patent; (2) the '474 patent has new features not found in the '414 application (e.g., raised triangles, additional pads, and lock wells); and (3) the '474 patent has removed old features that are not distinguished in the '414 application (e.g., a padlock locking mechanism and a six-fingered base plate).

Because the '474 patent is not entitled to the filing date of the '414 application, the remaining analysis of the on-sale bar is not difficult. TBC and TBF argue, and the plaintiffs have not disputed, that Spencer put the Mach 5 canister, which practices the design of the '474 patent, into public use more than a year before the application for the '474 patent.[14] Lacking entitlement to an earlier filing date,[15] the '474 patent is invalid under the on-sale bar.

*2. Infringement*

Even assuming the '474 patent is valid, the plaintiff must prove that the TBC and TBF's canister infringes the '474 patent. Patent infringement, a question of fact, requires proof by a preponderance of evidence. *Braun, Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 819 (Fed. Cir. 1992). *Kustom Signals, Inc. v. Applied Concepts, Inc.*, commands summary judgment "when there is no genuine issue of material fact or when, drawing all factual inferences in favor of the nonmoving party, no

---

[14] Spencer put the Mach 5 canister on sale and in public use as early as 2006, and the critical date for the '474 patent is February 18, 2010.

[15] The earliest application filed after the '414 application is the '419 application. Beginning in 2006, the public use and sale of the Mach 5 began more than a year before the December 12, 2008, filing date of the '419 application.

reasonable jury could return a verdict for the nonmoving party." 264 F.3d 1326,

1332 (Fed. Cir. 2001) (quotation marks omitted). To prove infringement in a design

patent case, a patentee must show that "an ordinary observer, familiar with the prior

art, would be deceived into thinking that the accused design was the same as the

patented design." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed.

Cir. 2008).

Pictures of the accused device are below:

 

The defendants correctly identify seven distinctions between the '474-patent

canister and the accused canister:

1. The bottom of the chamber of the accused canister is flat, but the
   '474-patent canister has a dome-shaped base plate at the bottom
   of the chamber.

2.    The accused canister has a flat lid, not a lid with six raised triangles.

3.    The accused canister's lid has no lock wells, but the lid on the '474-patent canister has three lock wells.

4.    The accused canister's lid rests inside the walls of the chamber, but the lid on the '474-patent canister fits over and around the walls of the chamber.

5.    The accused canister includes a pedestal that is wider than the chamber; the pedestal of the '474 patent is thinner than the chamber.

6.    The accused canister is supported by two opposing support rods, but the '474-patent canister has no support rods.

7.    The accused canister has squared edges, but the '474-patent canister has rounded edges.

No reasonable jury could find that the seven distinctions identified by the defendants pass unnoticed by an ordinary observer. Also, the defendants correctly note that the differences between the accused canister and the '474-patent canister become even more apparent to an ordinary observer who considers the prior art. As the Federal Circuit explained:

> When the differences between the claimed and accused designs are viewed in light of the prior art, the attention of the hypothetical ordinary observer may be drawn to those aspects of the claimed design that differ from the prior art. If the claimed design is close to the prior art designs, small differences between the accused design and the claimed design assume more importance to the eye of the hypothetical ordinary observer.

*Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (citations

omitted); *accord Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008)

("Where there are many examples of similar prior art designs . . . , differences

between the claimed and accused designs that might not be noticeable in the abstract

can become significant to the hypothetical ordinary observer who is conversant with

the prior art.").

The '801-patent canister, patented in 2000, manifests many similarities to the

'474-patent canister and to the accused canister.  Drawings of the '801-patent canister

are below:





Like the '474-patent canister and the accused canister, the '801-patent canister (1) is a hexagonal prism, (2) sits on a hexagonal-prism pedestal, (3) has transparent chamber walls, (4) has a lid with three slots for the user to insert coins into the chamber, (5) has ten pie-shaped pedals, (6) has five levels of pedals, and (7) has a vertical shaft that controls the pedals. Along with the accused canister, but not the '474-patent canister, the '801-patent canister (1) has squared edges, (2) has a lid that fits inside the walls of the canister, (3) has no locking wells on the lid, (4) has no dome-shaped base plate at the bottom of the canister, and (5) has a flat lid.

The '801-patent canister shows that the most immediately apparent similarities between the '474-patent canister and the accused canister (e.g., the hexagonal-prism-shaped chamber and pedestal and the ten pie-shaped pedals) would not draw the eye of the ordinary observer with knowledge of the prior art; these similarities exist in the

prior art, as well.[16]  Instead, the features of the '474-patent canister that would catch

the eye of the ordinary observer, familiar with the prior art, are the features that

distinguish the '474-patent canister from the prior art.  Those features are the same

features that distinguish the '474-patent canister from the accused canister.[17]  Thus,

no reasonable jury could find that an ordinary observer, familiar with the '801 patent,

could not distinguish the '474-patent canister from the accused canister.[18]

---

[16] The '474 patent lists eleven other prior art references.  (Doc. 68-2 at 2)  These eleven references further aid the ordinary observer in distinguishing the '474-patent canister and the accused canister.

[17] Some of the identified distinctions are particularly noticeable, as even Spencer has admitted.  For example, consider the dome-shaped base plate found in the '474-patent canister but not in the accused canister.  While prosecuting the '414 application, the examiner told Spencer that the canister in the '414 application shared too many similarities with the prior art.  In response, Spencer argued that his invention differed from the prior art, and Spencer identified as a distinguishing feature the "base support plate . . . [that has] 'an upper surface tapering downwardly from the central aperture.'"  (Doc. 68-21 at 7) (In other words, Spencer identified a dome-shaped base plate at the bottom of the '414-application chamber and argued that the plate distinguished the '414-application canister from other canisters.)  Spencer went on to explain the importance of the dome-shaped base plate and said, "This configuration makes the coins more visible and the system more effective in attracting users."  (Doc. 68-21 at 7).  Like the '801-patent canister but unlike the '474-patent canister, the accused canister has no dome-shaped base plate at the bottom of the chamber.

[18] The differences identified by TBC and TBF are not disputed by the plaintiffs.  Instead, the plaintiffs argue (1) that the '801-patent canister is easily distinguished because the chamber is designed to hold water and (2) that infringement is a question of fact.

The distinctions between the '801-patent canister and the accused canister that are identified by the plaintiffs are minimally probative.  The point of considering the '801 patent is not to say that the '801-patent canister and the accused canister are indistinguishable.  The point of considering the '801-patent is that the two canisters share many design similarities and that those design similarities aid the ordinary observer in understanding that a third canister that shares those characteristics may still be a different design, despite the similarities.

If no reasonable jury could find for the plaintiffs, infringement is resolvable and subject to determination on summary judgment.  *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1332 (Fed. Cir. 2001).  No reasonable jury could find that an ordinary observer, especially an observer familiar with the prior art, could fail to distinguish the '474-patent canister from the accused canister.

# CONCLUSION

The '474 patent is invalid under the on-sale bar of Section 102(b). Even if the '474 patent is valid, the accused canister does not infringe the '474 patent. Because the accused canister does not infringe the '474 patent, the plaintiffs' willful-infringement claim and induced-infringement claim require no further disposition. The defendants' motion (Doc. 69) for summary judgment is **GRANTED**. The clerk is directed to enter judgment in favor of the defendants and against the plaintiffs. The defendants' motion (Doc. 44) to dismiss the plaintiffs' second amended complaint is **DENIED AS MOOT**.

ORDERED in Tampa, Florida, on October 2, 2013.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that on December 24, 2013 I electronically filed a copy of the foregoing, Appellants' Appearance of Counsel, with the Court through the CM/ECF system, which will send a notice of filing to all registered CM/ECF users, being:

Attorney Jeffrey Joyner

of the Law Offices of

Greenberg Traurig

1840 Century Park East

Suite 1900

Los Angeles, CA 90067


Dated :  <u>December 24, 2013</u>          <u>/s/ Edward P. Dutkiewicz</u>

                                        Edward P. Dutkiewicz

                                        P.O. Box 937

                                        Dade City, FL 33526-0937

                                        PH: (352) 467 - 2682

                                        FX: (352) 567 - 5565

                                        <u>edduke@embarqmail.com</u> (email)

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,**

**TYPEFACE REQUIREMENTS AND TYPE STLE REQUIREMENTS**

This brief complies with the type-volume limitation of Federal
Rule of Appellate Procedure 32(a)(7)(B).

[X]    The brief contains 8,756 words, excluding the parts
of the brief exempted by Federal Rule of Appellate
Procedure 32(a)(7)(B)(iii), or

[X]    The brief uses a monospaced type face and contains
1034 lines of text, excluding the parts of the brief
exempted by Federal Rule of Appellate Procedure
32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal
Rule of Appellate Procedure 32(a)(5) and the type style
requirements of Federal Rule of Appellate Procedure
32(a)(6).

[ ]    The brief has been prepared in a proportionally
spaced typeface using or

[X]   The brief has been prepared in a monospaced typeface using Microsoft Word in New Courier, size 12.


Dated: December 24, 2013

                    Respectfully submitted,


                    /s/ Edward P. Dutkiewicz

                    Edward P. Dutkiewicz

                    FL Bar # 0883387

                    PO Box 937

                    Dade City, Florida 33526

                    Tel:  (352) 467-2682

                    Fax:  (352) 567-5526

                    Attorney for Defendant/Appellants